IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| ROBERT TRAUNER, Chapter 7 Trustee for Solid Rock Development Corporation, Inc., <br><br> Plaintiff, <br><br> v. <br><br> STATE BANK AND TRUST COMPANY, <br><br> Defendant. | <br><br><br><br><br> CIVIL ACTION NO. <br><br> 1:12-cv-03761-JEC |

## ORDER & OPINION

This case is before the Court on the motion of the bankruptcy trustee for leave to appeal a bankruptcy court's order denying his motion for summary judgment. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the plaintiff's motion for leave [2] should be **DENIED**.

## BACKGROUND

On September 27, 2012, the bankruptcy court below ruled on cross-motions for summary judgment filed by the parties presently before the Court: Trustee Robert Trauner and the State Bank and Trust ("SB&T"). (Bankr. Order, attached as Ex. 1 to Pl.'s Mot. for Leave [2].) These cross-motions were filed after the defendant SB&T made

a credit bid[1] in a foreclosure sale that included, as part of the bind amount, statutory attorney fees allowable under Georgia state law, but in excess of those fees actually incurred by SB&T. (*Id.* at 2 & 3.)

The facts of the case are largely undisputed. On February 3, 2009, the debtor in this action, Solid Rock Development Corporation, executed promissory notes secured by a deed (the "property") currently held by SB&T. (*Id.* at 2.) After being granted relief from the automatic stay,[2] SB&T sent a letter to Solid Rock notifying it that SB&T had accelerated the debt and that if this debt was not paid within 10 days, SB&T would seek attorney's fees pursuant to O.C.G.A. § 13-1-11. (*Id.* at 3.)

When the balance was not paid, SB&T conducted a foreclosure sale

---

[1] Credit bidding allows for a creditor with a secured interest in a property that is the subject of a foreclosure sale to make a bid at that sale up to the amount of its claim. If the creditor wins the foreclosure sale, he may offset his claim against the purchase price of the property. 11 U.S.C. § 363(k); *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 (2012).

[2] The bankruptcy court below entered an order prepared by SB&T's counsel and signed by Trauner as "not opposed." The order provided:

> The automatic stay of 11 U.S.C. § 362 of the Bankruptcy Code is modified to allow SB&T to exercise its rights and remedies under applicable law, including foreclosure of its security interest in the Property, promptly accounting to the Trustee for any proceeds received in excess of the lawful claim of SB&T.

(Bankr. Order [2] at 2-3.)

2

on November 1, 2011, which it won with a credit bid in the amount of $2,025,182.00. (Bankr. Order [2] at 3.) This credit bid included of statutory fees under O.C.G.A. § 13-1-11 of $262,386.87. While the precise amount of actual attorney's fees has not been stipulated by the parties, there appears to be no dispute that the statutory attorney fees are far in excess of those actually incurred by SB&T.

## I.  **BANKRUPTCY COURT'S RULING**

In its motion for summary judgment, the trustee argued that the Eleventh Circuit's decision in *In re Welzel,* 275 F.3d 1308 (11th Cir. 2001), limited the recovery of fees to actual, reasonable attorney fees, and that the statutory attorney fees under O.C.G.A. § 13-1-11 were not recoverable. Therefore, the trustee argued, SB&T could not recover statutory attorney's fees through its foreclosure sale and must pay the trustee the difference between its actual attorneys' fees and the statutory attorneys' fees used in the credit bid. (Bankr. Order [2-1] at 4.) As the property was never abandoned and the order lifting the automatic stay expressly allowed the trustee to seek any monies in excess of the lawful claim by SB&T,[3] the bankruptcy court agreed with the trustee that the *Welzel* decision governed. Thus, § 506(b) applied to the foreclosure sale, limited the collectable attorneys' fees to only those that were actually

---

[3] *See* note 2 *supra*.

3

incurred, and the trustee was entitled to recover any surplus. (*Id.* at 13.)

Yet, even though it was undisputed that SB&T was the high bidder at the foreclosure sale and had included the statutory attorney fees in its credit bid, the bankruptcy court remained unconvinced that SB&T had actually received the full amount of statutory attorney fees in excess of their allowable claim. (*Id.* at 15.) The bankruptcy court opined that many possible explanations existed for why SB&T made its credit bid and that "[i]f SB&T unilaterally bid in the entire debt, including statutory attorney's fees, but the value of the Property actually does not support the amount bid in, SB&T [would not have] receive[d] a surplus to which the Trustee is entitled." (*Id.*) For these reasons, the bankruptcy court decided the proper way to proceed was to hold an evidentiary hearing to determine the actual value of the property, and, from that, to calculate the amount of surplus owed to the trustee, if any. (*Id.* at 15-16.)

## II.  **PARTIES' CONTENTIONS ON APPEAL**

This final part of the bankruptcy court's ruling--that the credit bid made at the foreclosure sale by SB&T does not necessarily reflect the extent to which the creditor recovered fees in excess of those allowable under § 506(b)--is the portion of the order that the trustee appeals. (Mot. for Leave [2-4] at 6.) Specifically, the trustee argues that the credit bid of $2,025,182.00 should, as a

4

matter of law, represent the value received by SB&T, obviating the need to conduct an evidentiary hearing as to the value of the property. (*Id.* at 3.)

The trustee argues that, because its appeal meets the requirements of 28 U.S.C. § 1292(b), this Court should grant its interlocutory appeal motion. He argues that this appeal meets the first requirement for such an appeal because it involves a question of pure law and can be decided quickly and cleanly without having to study the record in the underlying matter. (*Id.* at 8-9.) Second, the trustee argues that it has shown a substantial ground for a difference of opinion on this legal issue because it is a question of law that has yet to be addressed by the Eleventh Circuit. (*Id.* at 9.) He cites the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), as representing conflicting law. (*Id.* at 11.) Although he admits that *BFP* involved a different statute, the trustee argues that when viewed broadly, *BFP* stands for the proposition that a "federal statute should not be construed to override the effect of a duly conducted foreclosure sale under State Law." (Mot. for Leave [2-4] at 16.) The trustee argues that the third requirement of § 1292(b) is also met because, if he wins his appeal, it will eliminate the need for an evidentiary hearing on the value of the property.

SB&T counters by arguing that none of the three prongs of the §

5

1292(b) test are satisfied.  First, SB&T disputes that the question to be certified is one of pure law.  SB&T notes that whether the value of the foreclosure sale credit bid was the equivalent of cash value is a fact for which the bankruptcy court has yet to make a finding and it is not a legal question fit for interlocutory review.  (Def.'s Resp. [3] at 3-4.)  Second, SB&T argues that the trustee failed to show that there is a substantial ground for difference of legal opinion because he has failed to identify two courts that interpret the relevant legal principle differently.  (*Id.* at 4-5.)  Finally, SB&T argues that the trustee failed to meet the third requirement because the ultimate termination of the litigation will not be substantially advanced by an immediate appeal.  Noting that valuation hearings are commonplace in bankruptcy proceedings, SB&T argues that the litigation would have been substantially advanced because these hearings typically only require a meeting with an appraiser prior to coming to court for a short hearing.  In fact, SB&T argues, the litigation will be resolved more rapidly and efficiently if the bankruptcy court below could be allowed to make its determinations without this premature appeal.  (*Id.* at 6.)

## **DISCUSSION**

Plaintiff, as trustee for Solid Rock Development, brings this action seeking certification of an interlocutory appeal from a bankruptcy court's grant of partial summary judgment.

## I. **LEGAL STANDARD**

District courts may exercise jurisdiction to grant interlocutory appeals from bankruptcy proceedings. 28 U.S.C. § 158(a). Because § 158 provides no guidance for determining when to exercise this discretion, however, the Eleventh Circuit approves use of the factors outlined in 28 U.S.C. § 1292(b), which governs discretionary interlocutory appeals from district courts to appellate courts. *Laurent v. Herkert*, 196 Fed. App'x 771 (11th Cir. 2006) (citing *In re Charter Co.*, 778 F.2d 617, 620 n.5 (11th Cir. 1985).

Under this section, a district court may grant a motion for an interlocutory appeal if the appeal "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b)(numbering added). The Eleventh Circuit, however, has emphasized that the interlocutory appeals process should be used sparingly in order to prevent piecemeal litigation and promote judicial efficiency. *See McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004). For these reasons, both Congress and the Eleventh Circuit maintain that requests for interlocutory appeals should only be granted in "exceptional cases where a decision of the appeal may avoid protracted and expensive litigation." *Id.* at 1256 (quoting the report of the Judicial Conference to Congress regarding

7

the creation of section 1292(b)).

Thus, a court's discretionary power is so broad and the concern against overuse of the process so great that a court may turn down an appeal even if all three of these requirements are met. *Id.* at 1259. Further, the party seeking leave to appeal bears the burden of proving exceptional circumstances and, therefore, the need for an interlocutory appeal. *FXM, P.C. v. Gordon*, Civ. No. 1:07-cv-1642,[4] 2007 WL 3491274, at *3 (N.D. Ga. Nov. 6, 2007)(Carnes, J.).

## II. CONTROLLING QUESTION OF LAW

The first element is not shown merely by proving that an answer to the question on appeal would be determinative of an issue. More than just demonstrating that outcome, an aspiring appellant must also demonstrate that the court is confronted with an issue of "pure" law that can be decided quickly and cleanly without having to study the record. *McFarlin*, 381 F.3d at 1258. One way of determining whether a question is controlling is deciding that it disposes "not only [] the case at hand, but also disposes of a wide spectrum of cases." *FXM, P.C.*, 2007 WL 3491274, at *3.

The trustee claims that this appeal falls into this category. He argues that in answering his certified question in the affirmative, this Court will help in the disposition in a wide array

---

[4] Civil case numbers 1:07-cv-1660-JEC and 1:07-cv-1726-JEC were consolidated into this action.

8

AO 72A
(Rev.8/82)

of cases because it will prevent the need in the future to hold evidentiary hearings after foreclosure sales to determine if the purchase price accurately reflected the value received by the creditor. (Pl.'s Reply [4-8] at 6.)  The Court disagrees.

First, the trustee overstates the expansiveness of Judge Hagenau's ruling and thus, asks this Court to certify a question for appeal that is much broader than necessary.  This is not a circumstance where the bankruptcy court ruled that valuation hearings are required routinely to determine the proper value of the foreclosed property or that a winning credit bid may never be deemed to be the value received by the creditor, as the trustee's proposed certified question suggests.  (*See* Mot. for Leave [2] at 6.)  The bankruptcy court based its conclusion to hold an evidentiary hearing not on some interpretation of a legal principle or a bankruptcy statute, but on the facts of the case--specifically, its lack of knowledge about what motivated SB&T in its bid process and  "whether the credit bid of statutory attorney's fees is a reflection of the value of the Property."  (Bankr. Order [2-1] at 15.)

Simply put, Judge Hagenau did not substantively or expansively engage on the legal issue the trustee now presents on appeal.  The bankruptcy court merely expressed doubts as to whether, in this case, the defendant SB&T actually received the statutory attorney's fees included in its bid.  (*Id.* at 15.)  Further, the bankruptcy court

9

explicitly listed a series of issues not addressed by its order and limited its ruling to cases where a court needs to "determin[e] whether a surplus is owed to the estate in accordance with *Welzel* and 11 U.S.C. § 506(b)." (*Id.* at 14.) The fact that part of the bankruptcy court's determination also hinged on the wording of the order granting relief from the automatic stay, (*see id.* at 11), further limits the applicability of this holding to other bankruptcy decisions. Even though Judge Hagenau carefully couched her decision in these respects, the trustee has read the order more broadly, and, from that, he argues that an issue of "pure" law is present. In short, while the question proposed for certification may very well dispose of a wide array of cases that could hypothetically arise in the future, it would not be proper for the Court to engage in this legal inquiry when the bankruptcy court has yet to do so. *Cf. McFarlin,* 381 F.3d at 1255 (noting that a court's failure to specify the reasons for certifying an appeal under § 1292(b) is a factor the appellate court can use to determine how to exercise its discretionary power to review).

For these reasons, the Court concludes that the plaintiff failed to meet his burden with respect to the first prong of the § 1292(b) test.

### III. **SUBSTANTIAL GROUND FOR DIFFERENCES OF OPINION**

Even if this Court incorrectly construed the scope of the bankruptcy court's order or the trustee's proposed question for certification, this motion should still be denied because even if the legal issue is as the plaintiff presents, the plaintiff failed to meet the other two requirements of § 1292(b).

A party may satisfy the requirement that there be a substantial ground for difference of opinion by showing the issue is difficult and one of first impression or that there is a difference of opinion as to the issue, whether within the circuit or between different courts of appeal. *Georgia State Conf. of the NAACP v. Fayette Co. Bd. of Comm'rs*, Civil Action No. 3:11-cv-123-TCB, 2013 WL 3336754, at *1 (N.D. Ga. July 3, 2013)(Batten, J.). "However, the fact that the question is one of first impression, standing alone, is insufficient." *Id.* (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996); *In re Auto Dealer Servs., Inc.*, 81 B.R. 94, 96 (M.D. Fla. 1987). Instead, the court's duty is to analyze the strength of the arguments opposing the challenged ruling when determining if there is a *substantial* ground for dispute. *Georgia State Conf.*, 2013 WL 3336754, at *1.

In determining whether there is a substantial ground for dispute, courts often look to decisions from other circuits in the event that the issue is one of first impression. *E.g. In re Pac.*

11

AO 72A
(Rev.8/82)

*Forest Prods., Corp.,* 335 B.R. 910 (S.D. Fla. 2005).  After failing to locate any precedent within its circuit, the *Pacific Forest* court decided it "must [] determine 'whether at least two courts interpret the law differently'" because petitioners "can satisfy their burden on this element if they can prove that there is a substantial difference of opinion between the Bankruptcy Court's ruling, and the rulings of other courts."  *Id.* at 922-23.  After locating a case from another circuit that directly conflicted with the ruling of the bankruptcy decision being appealed, Judge Gold concluded that, "[g]iven the dearth of case-law in the Eleventh Circuit, and the degree to which [the other bankruptcy ruling] is on point with this case and is neither insubstantial nor frivolous...there is a substantial ground for difference of opinion sufficient to warrant interlocutory review."  *Id.* at 923-24.

In the present case, the trustee fails to identify any decisions, either within or outside this circuit, that show that substantial ground for dispute exists regarding the issue they seek to appeal.  The trustee simply relies on the fact that this issue appears to be one of first impression, albeit he points to general principles of bankruptcy law that the bankruptcy court has violated.  (Mot. for Leave [2] at 11.)  These arguments, however, fail to persuade the Court that plaintiff has met his burden of proving that this is an "exceptional case" where a substantial difference of

12

opinion exists.

For these reasons,[5] the Court concludes that the trustee failed to meet the second requirement of 1292(b).

## IV. **MATERIALLY ADVANCE THE LITIGATION**

The trustee failed to adequately illustrate that an immediate appeal would materially advance this litigation. *See* 28 U.S.C. § 1292(b). The trustee's sole argument for the advancement of litigation is that a ruling will eliminate the need for the evidentiary hearing. (Mot. for Leave [2] at 11-12.) Defendant-appellee SB&T argues that deciding this motion now will not substantially shorten this litigation as the valuation hearing that would be eliminated would be brief and require little preparation. (Def.'s Resp. [3] at 6.)

The Court agrees. Plaintiff fails to show how this litigation will be materially advanced by an immediate appeal. In fact, the litigation would likely have been resolved more rapidly and efficiently had this appeal not been taken. First, permitting premature appeals only serves to hinder the lower court's ability to advance the litigation. *FXM, P.C.*, 2007 WL 3491274, at *4. Second, certifying this appeal and deciding the issue on its merits will

---

[5] Additionally, "if it is not clear that there is a question of law, then there are no grounds for a substantial difference of opinion." *FXM, P.C.*, 2007 WL 3491274, at *4.

13

AO 72A
(Rev.8/82)

likely take much longer and require much more preparation by the parties than would be required if the bankruptcy court held a simple evidentiary hearing. This factor is especially relevant where, as here, the evidentiary hearing could render the trustee's current complaints moot. At the very least, the hearing would provide findings of fact upon which a reviewing court could adequately determine the legal question presented.

For these reasons, the Court concludes that the trustee's motion is premature and that he has failed to show that the litigation will be *substantially* advanced by an immediate appeal. Nevertheless, having decided that this case does not raise the type of compelling circumstance that justifies an interlocutory appeal, the Court does not intend to diminish the impact on bankruptcy practice that could result should the bankruptcy court's intended practice here become the norm. There appears to be much to commend the trustee's argument that allowing these types of hearings could greatly, and perhaps unnecessarily, expand bankruptcy proceedings. After all, a secured creditor, such as SB&T, is the master of its own destiny at foreclosure sales. Typically, as the only bidder, the creditor will win any bid it makes. So there is really no need to overbid the value of the property. And, if it does so, arguably, the creditor should be stuck with that decision. If the creditor finds himself competing with other bidders, he may seek to increase his bid to win

14

the property, but that action would merely show that the property <u>was</u> worth the bid amount.

It may be that SB&T simply made a mistake by including in the bid price the amount of statutory attorney's fees, when the value of the property could not support that amount. And, perhaps suspecting that this happened, the bankruptcy court acted mercifully, in trying to provide SB&T with a way out of its blunder and to prevent the trustee from receiving a windfall based on the creditor's harmless mistake. Whether that is a good practice, or whether it complies with Georgia and bankruptcy law, is something that can be best decided when the bankruptcy court creates a record and finally rules. From that ruling, an appellate court can make a definitive ruling.

## **CONCLUSION**

For the above reasons, the Court concludes that the plaintiff failed to meet his high burden in proving that this appeal presents an "exceptional case[] where a decision of the appeal may avoid protracted and expensive litigation." *McFarlin*, 381 F.3d at 1256. Accordingly, the plaintiff's motion for leave to appeal the bankruptcy court's order [2] is **DENIED**.

SO ORDERED, this 22nd day of September, 2013.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

15

AO 72A
(Rev.8/82)